24 F.3d 1526
 29 Fed.R.Serv.3d 264
 Maggie WILLIAMS, Plaintiff-Appellee,
v.
COMMONWEALTH OF KENTUCKY; Cabinet for Human Resources;
John Hodgkin; Ronald Holland; Frank J. Willey;
Lynne McWilliams; P. Kenneth Cox;
Margaret Whittet; Darvin
Allen, Defendants-Appellants.
 Nos. 93-5222, 93-5656.
 United States Court of Appeals,
Sixth Circuit.
 Argued April 21, 1994.
Decided May 26, 1994.
 
 James M. Mooney, Eugene F. Mooney (argued and briefed), Mooney, Mooney & Mooney, Lexington, KY, for plaintiff-appellee.
 Robert Y. Gwin (argued), D. Patton Pelfrey, Robert W. Dibert, Charles E. Allen, III (briefed), Brown, Todd & Heyburn, Louisville, KY, for defendants-appellants.
 Before: MILBURN and GUY, Circuit Judges; and TIMBERS, Senior Circuit Judge.*
 MILBURN, Circuit Judge.
 
 
 1
 Plaintiff Maggie Williams is a tenured employee of the Commonwealth of Kentucky with more than twenty years of service in the Cabinet for Human Resources, Department for Employment Services ("DES"), Division for Field Services. From February 1985 until May 3, 1990, Ms. Williams was the Field Office Manager of the DES office in Winchester, Kentucky, and its satellite office in Richmond, Kentucky, where she supervised approximately thirty employees. These offices administer unemployment insurance and employment services programs for the Commonwealth of Kentucky. Williams brought this action under 42 U.S.C. Sec. 1983 challenging her demotion from the position of Field Office Manager to Senior Unemployment Insurance Examiner.[1] She alleged that defendants violated her procedural due process rights by demoting her without prior notice and hearing and violated her rights under the First Amendment by demoting her for engaging in protected free speech. Williams also alleged violations of state law. The district court denied defendants' motion for summary judgment based on qualified immunity and granted Williams' motion for partial summary judgment on her procedural due process claim. In these consolidated appeals, the issues are (1) whether defendants are entitled to qualified immunity as to Williams' free speech claim, (2) whether the defendants are entitled to qualified immunity as to Williams' procedural due process claim, (3) whether the district court erred by granting partial summary judgment to Williams on the procedural due process claim, and (4) whether the Eleventh Amendment prohibits the claims for injunctive relief.
 
 I.
 
 2
 Williams' complaint and affidavit indicate that she believes the problems she experienced with her supervisors, which eventually resulted in her demotion, began in November 1988, when she attended a meeting of DES office managers in Louisville, Kentucky. Williams states that at this meeting, the managers were told that they were expected to hire and promote the "Governor's people" for positions under their supervision and that failure to cooperate would result in "serious consequences." Williams alleged that the plan to hire the "Governor's people" violated the state merit system laws, and she made her position on this matter clear to her supervisors. She also informed the employees under her supervision that she would not help political employees obtain merit positions.
 
 
 3
 Williams alleged that in February 1989, defendants Cox, Whittet, and Willey caused the state to hire a political appointee, Franklin L. Gibson, as an unclassified "federally funded time limited" employee in the Richmond DES office; thus, he was placed under Williams' supervision. Gibson's job was to recruit applicants to the Federal Job Corps program. During Gibson's six-month probationary period, Williams informed defendants Cox and Hodgkin that she believed Gibson was engaging in political activities on the job and was using the DES office telephones to conduct his private business. Williams also informed defendants that Gibson failed to account to his supervisors, including Williams, for his work time and travel activities and that Gibson had submitted a falsified travel voucher. Consequently, in June 1989, Williams recommended to defendants Cox, Whittet, and Willey that Gibson not be retained after his probationary period due to his political activities on the job. Defendants declined to follow Williams' recommendation. Williams reported Gibson's falsified voucher, and an alteration of the voucher authorized by defendant Cox, to the Kentucky Attorney General's office. Williams also reported to the Kentucky State Police her suspicions regarding Gibson's unauthorized telephone calls.
 
 
 4
 Thereafter, Williams alleges that defendant Cox attempted to force her to change her unfavorable recommendation of Gibson and that upon her refusal to comply with his request, he gave her an adverse job performance rating. Subsequently, an administrative review hearing was held in August 1989 to determine whether Williams' employment should be terminated. As a result of the hearing, a formal reprimand was entered in Williams' personnel record.
 
 
 5
 In October 1989, defendant Allen instituted, and defendant Holland conducted, an investigation of Williams' management of the Winchester DES office. As a result of this investigation, defendant Allen issued a memorandum to all employees of the Winchester DES office directing them to refrain from making derogatory comments about claimants, clients, job seekers, employer representatives, or other members of the public, as well as co-workers, subordinates, or supervisors. Notwithstanding this directive, Williams continued to report politically motivated activities of DES employees. Williams informed defendants Hodgkin, Allen, Whittet, and Holland that she suspected that James B. Little, an employee in the DES Winchester office, had "bought" Williams' job and was engaging in political patronage activities in making job referrals, soliciting or accepting gratuities from job applicants, and committing criminal acts of vandalism against Williams. On April 6, 1990, Williams formally reprimanded Little for engaging in partisan political activities on the job.
 
 
 6
 In response to the reprimand, Little filed a formal grievance with defendant Hodgkin, objecting to the reprimand and requesting an investigation of Williams' management of the Winchester DES office. On April 26, 1990, defendant Allen requested the Cabinet for Human Resources' Office of Inspector General to conduct another investigation of the management of the Winchester DES office. On May 3, 1990, Williams was removed from her Field Office Manager position and temporarily assigned to work as an interviewer in the DES office in Georgetown, Kentucky. Defendants state that Williams was temporarily reassigned to facilitate the investigation of the Winchester DES office. This assignment was extended through an administrative procedure known as detail to special duty until the investigation had been completed.
 
 
 7
 In February 1991, Williams reported threats she had received and acts of vandalism perpetrated against her to the police and Federal Bureau of Investigation. She also related the political activities and violations of Kentucky law allegedly occurring at DES.
 
 
 8
 After the Office of Inspector General's investigation of the Winchester office had been completed, defendant Holland recommended to defendant Allen that Williams be terminated or demoted because the investigation revealed that (1) Williams had given preferential treatment to some employees, allowing them to violate regulations, while refusing to help other selected employees seek advancement through the merit system; (2) Williams had maintained a pattern of verbal abuse toward employees and citizens in violation of defendant Allen's memorandum directing that she and other employees refrain from making such derogatory comments; and (3) Williams had continued to "factionalize" the Winchester office by threatening to retaliate against employees who associated with Little. After additional investigation, James Thompson, the DES Regional Supervisor, concluded that Williams should be terminated for insubordination and possible criminal conduct in her management of the Winchester office. Instead of accepting this recommendation, defendant Allen requested a demotion for Williams.
 
 
 9
 On May 30, 1991, Thompson and defendant Hodgkin hand delivered an eighteen-page letter from defendant McWilliams to Williams at the Georgetown DES office advising Williams of her demotion. The letter detailed the reasons for the demotion and concluded by advising Williams that as an employee with status in her position she was entitled to "appeal this action to the Personnel Board, within thirty (30) days after receipt of this notice." J.A. 1027.
 
 
 10
 Williams filed this action in the district court against the Commonwealth of Kentucky, the Cabinet for Human Resources, and various individual supervisors and administrators. The individuals were sued in both their individual and official capacities. The complaint consisted of five counts: (1) deprivation of employment rights without due process under the Fourteenth Amendment in violation of 42 U.S.C. Sec. 1983, (2) deprivation of employment rights for exercising free speech rights under the First Amendment in violation of 42 U.S.C. Sec. 1983, (3) reprisal for reporting suspected violations of Kentucky law in violation of Ky.Rev.Stat. Ann. Sec. 61.102, (4) demotion without just cause in violation of Ky.Rev.Stat.Ann. Sec. 18A.095, and (5) wrongful discharge. Williams sought restoration to her position as Field Office Manager of the Winchester DES office, expungement from her personnel record of all references to her reprimand and demotion, compensatory and punitive damages, attorney's fees, and a declaratory judgment that defendants violated her rights under federal and state law.
 
 
 11
 Defendants moved for summary judgment arguing that the Eleventh Amendment barred Williams' claims and that the individual defendants were entitled to qualified immunity on the federal claims. Williams moved for partial summary judgment on her due process claim. On January 22, 1993, the district court issued a Memorandum Opinion and Order and Judgment, in which the court (1) dismissed all claims against the Commonwealth of Kentucky and the Cabinet for Human Resources and the claims for monetary relief against the defendant state officials sued in their official capacities because these claims were barred by the Eleventh Amendment, (2) held that the Eleventh Amendment does not bar claims for injunctive relief against the state officials sued in their official capacities or any claims against the state officials sued in their individual capacities, (3) held that defendants were not entitled to qualified immunity on the federal claims, and (4) granted partial summary judgment to Williams on her due process claim. The district court, pursuant to Federal Rule of Civil Procedure 54(b), stated that there was no just reason for delay and that its judgment was final and appealable.
 
 
 12
 The district court determined that defendants were not entitled to qualified immunity on the due process claim because it held that Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), clearly established that a tenured state employee must be given notice and hearing before being demoted, even though Loudermill involved a termination of an employee rather than a demotion. The district court granted partial summary judgment to Williams on her due process claim because (1) Williams had a protected property interest in her job, (2) Loudermill requires notice and hearing before depriving a person of such an interest, and (3) defendants conceded that Williams was demoted without advance notice and hearing. Appeal No. 93-5222 timely followed.
 
 
 13
 On February 1, 1993, defendants moved the district court to alter, amend, or vacate its January 22, 1993, judgment, arguing that they should have been granted qualified immunity because Loudermill does not clearly establish a state employee's right to predemotion notice and hearing. On April 20, 1993, defendants filed a supplemental motion to vacate the January 22, 1993, judgment on the grounds of newly discovered evidence. The newly discovered evidence was a tape recording of the conversation between Williams and defendant Hodgkin and Thompson at the time Hodgkin and Thompson delivered the eighteen-page demotion letter to Williams on May 30, 1991. Defendants argued that this conversation satisfied the predeprivation notice and hearing requirements of Loudermill. On April 28, 1993, the district court issued a Supplemental Opinion and Order and Judgment, reaffirming its previous holding that defendants were not entitled to qualified immunity on the due process claim and that Williams was entitled to partial summary judgment on her due process claim, and clarifying its previous holding that issues of fact concerning the reasons for Williams' demotion precluded summary judgment to defendants on the First Amendment claim on the basis of qualified immunity. Appeal No. 93-5656 timely followed and was consolidated with No. 93-5222.
 
 II.
 
 14
 On appeal, defendants[2] challenge the district court's determinations that they were not entitled to qualified immunity on both the due process claim and the free speech claim, that Williams was entitled to partial summary judgment on her due process claim, and that the claims for injunctive relief against defendants were not barred by the Eleventh Amendment.
 
 A.
 
 15
 Defendants argue that they are entitled to qualified immunity because at the time Williams was demoted it was not clearly established that the Due Process Clause of the Fourteenth Amendment required that a public employee be given notice and hearing before a demotion, nor was it clearly established that the Free Speech Clause of the First Amendment prohibited adverse employment action based on statements such as Williams cites as the reason for her demotion. The district court's determination that defendants were not entitled to qualified immunity is immediately appealable as a "final judgment" under the collateral order doctrine, and we therefore have jurisdiction over these qualified immunity issues. Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). Because the question of whether defendants are entitled to qualified immunity is a question of law, we review the district court's determination on this issue de novo. E.g., Walton v. City of Southfield, 995 F.2d 1331, 1335 (6th Cir.1993).
 
 
 16
 Government officials, such as the individual defendants in this case, have qualified immunity from personal liability for actions taken while performing discretionary functions. These officials "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). If the right the government official allegedly violated was clearly established at the time of the challenged conduct, "the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." Id. at 818-19, 102 S.Ct. at 2738-39. For a right to be clearly established,
 
 
 17
 [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.
 
 
 18
 Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (citations omitted). "[T]he particular conduct of the official must fall clearly within the area protected by the constitutional right, such that a reasonable official would have known that his or her conduct violated the constitutional right." Walton, 995 F.2d at 1336.
 
 
 19
 "In inquiring whether a constitutional right is clearly established, we must 'look first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits.' " Id. (quoting Daugherty v. Campbell, 935 F.2d 780, 784 (6th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 939, 117 L.Ed.2d 110 (1992)).
 
 
 20
 [I]n the ordinary instance, to find a clearly established constitutional right, a district court must find binding precedent by the Supreme Court, its court of appeals or itself. In an extraordinary case, it may be possible for the decisions of other courts to clearly establish a principle of law. For the decisions of other courts to provide such "clearly established law," these decisions must both point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting.
 
 
 21
 Ohio Civil Serv. Employees Ass'n v. Seiter, 858 F.2d 1171, 1177 (6th Cir.1988).
 
 
 22
 (1)
 
 
 23
 Williams' First Amendment claim rests on her allegations that she was removed and demoted by defendants in retaliation for her statements that were critical of political patronage employment practices, and because of her statements and reports to her superiors, various police officials, and others that she suspected that state employees were engaging in political patronage and other illegal activities in the Winchester DES office. On the other hand, defendants contend that Williams was removed from the Winchester DES office in May 1990, in order to facilitate the investigation of that office, and she was demoted in May 1991 as discipline for her poor management of the Winchester DES office. The district court denied defendants' motion for summary judgment on the First Amendment claim based on qualified immunity because the conflicting positions of the parties presented a genuine issue of fact as to the reasons for the actions taken against Williams. This causation analysis would be relevant to deciding a motion for summary judgment on the merits of the First Amendment claim, see Mount Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), but it is unresponsive to defendants' motion for summary judgment based on qualified immunity. Gossman v. Allen, 950 F.2d 338, 342 (6th Cir.1991); see also Barnes v. McDowell, 848 F.2d 725, 733 n. 9 (6th Cir.1988) (explaining the various burdens in a public employment, free speech case), cert. denied, 488 U.S. 1007, 109 S.Ct. 789, 102 L.Ed.2d 780 (1989). For the purposes of this qualified immunity issue, defendants do not argue that they were motivated by reasons other than Williams' speech, but rather they argue that they are entitled to qualified immunity because it was not clearly established that the First Amendment protects statements such as those Williams cites as the basis for her removal and demotion.
 
 
 24
 "It is clearly established that a State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." Rankin v. McPherson, 483 U.S. 378, 383, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987) (citing Perry v. Sindermann, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972)). The question that we must answer, however, is whether the contours of this right of a public employee to be free from adverse employment action on the basis of protected speech were sufficiently clear that a reasonable official would understand that demoting an employee on the basis of the speech Williams cites as the reason for her demotion would violate that right. See Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); Guercio v. Brody, 911 F.2d 1179, 1184 (6th Cir.1990) (stating that qualified immunity inquiry in public employee, free speech case is whether the rights "were so clear at the time in question that reasonable minds could not differ on the constitutionality of [the employee's] discharge"), cert. denied, 500 U.S. 904, 111 S.Ct. 1681, 114 L.Ed.2d 76 (1991); Garvie v. Jackson, 845 F.2d 647, 650 (6th Cir.1988) ("we consider whether reasonably competent officials could have disagreed on whether and to what extent [the employee's] speech was protected by the first amendment").
 
 
 25
 The Supreme Court has developed a balancing test for determining if a public employee's free speech rights have been infringed.
 
 
 26
 The determination whether a public employer has properly discharged an employee for engaging in speech requires "a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering v. Board of Education, 391 U.S. 563, 568 [88 S.Ct. 1731, 1734-35, 20 L.Ed.2d 811] (1968); Connick v. Myers, 461 U.S. 138, 140 [103 S.Ct. 1684, 1686, 75 L.Ed.2d 708] (1983). This balancing is necessary in order to accommodate the dual role of the public employer as a provider of public services and as a government entity operating under the constraints of the First Amendment. On the one hand, public employers are employers, concerned with the efficient function of their operations; review of every personnel decision made by a public employer could, in the long run, hamper the performance of public functions. On the other hand, "the threat of dismissal from public employment is ... a potent means of inhibiting speech." Pickering, 391 U.S. at 574 [88 S.Ct. at 1737]. Vigilance is necessary to ensure that public employers do not use authority over employees to silence discourse, not because it hampers public functions but simply because superiors disagree with the content of employees' speech.
 
 
 27
 Rankin, 483 U.S. at 384, 107 S.Ct. at 2896-97 (parallel citations omitted). Thus, determining if defendants could rightfully take adverse employment action against Williams on the basis of her speech is a two-step process. The threshold inquiry is whether the speech that Williams cites as the basis for her removal and discharge "may be 'fairly characterized as constituting speech on a matter of public concern.' " Id. (quoting Connick v. Myers, 461 U.S. 138, 146, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983)). If so, then we must determine if Williams' interest in speaking freely is outweighed by the state's interest in promoting the efficiency of public services. Id. 483 U.S. at 388, 107 S.Ct. at 2899.
 
 
 28
 Connick provides guidance for determining whether a public employee's speech constitutes speech on a matter of public concern. In Connick, an assistant district attorney, disgruntled over her pending transfer, distributed a questionnaire to her co-workers asking their opinions about several office policies. The Court stated that "[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Connick, 461 U.S. at 147-48, 103 S.Ct. at 1690. The Court held that the questions concerning confidence in supervisors, morale in the workplace, and the need for a grievance committee did not address matters of public concern, but rather were questions concerning internal office affairs and were designed for the plaintiff merely "to gather ammunition for another round of controversy with her superiors." Id. at 148, 103 S.Ct. at 1691. However, the Court found that the question asking if the employees "ever feel pressured to work in political campaigns on behalf of office supported candidates" did address a matter of public concern. Id. at 149, 103 S.Ct. at 1691.
 
 
 29
 Just as the question concerning political pressure in Connick, Williams' statements that were critical of political patronage employment practices and her statements and reports that she suspected state employees were engaging in political activities at the DES office addressed matters of public concern. As the Supreme Court stated in Connick, "there is a demonstrated interest in this country that government service should depend upon meritorious performance rather than political service." Id. at 149, 103 S.Ct. at 1691. Furthermore, we have held that "[p]ublic interest is near its zenith when ensuring that public organizations are being operated in accordance with the law." Marohnic v. Walker, 800 F.2d 613, 616 (6th Cir.1986) (per curiam); see also Solomon v. Royal Oak Township, 842 F.2d 862, 865 (6th Cir.1988) (stating that speech disclosing public corruption is a matter of public interest). Therefore, the Supreme Court opinion in Connick and opinions of this court clearly establish that Williams' statements about political patronage practices and her statements and reports about employees using their positions for partisan political activities constituted speech on matters of public concern.
 
 
 30
 Defendants' argument that our decision in Thomson v. Scheid, 977 F.2d 1017 (6th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 2341, 124 L.Ed.2d 251 (1993), requires a different conclusion is mistaken. In that case, the plaintiff was a fraud investigator for the state. He had conversations with his supervisors concerning one of his fraud investigations, in which they discussed the confidentiality policies and proper procedures for bringing charges. We concluded that these conversations concerned plaintiff's duties as an employee, and therefore "these conversations concern[ed] matters of internal department policy and cannot be considered speaking out on matters of public concern." Id. at 1021. Discussions about office policy and job duties as in Thomson may address matters of only private concern, but criticizing political patronage practices and reporting allegedly politically corrupt activities of employees, as Williams did, addresses matters of great public concern.
 
 
 31
 Defendants also argue that Williams lacked any factual basis for her statements about political patronage practices and corruption in the Winchester DES office. We have noted that the Pickering Court "declined to extend protection to false statements that are knowingly or recklessly made." Gossman v. Allen, 950 F.2d 338, 342 (6th Cir.1991) (citing Pickering, 391 U.S. at 574, 88 S.Ct. at 1737). And for purposes of determining if public officials are entitled to qualified immunity, this means that "[i]f an official reasonably believes that an employee made statements with knowledge of, or reckless indifference to, their falsity, the official would conclude that the employee could be fired without offending the First Amendment," and therefore be entitled to qualified immunity. Gossman, 950 F.2d at 342.
 
 
 32
 In Gossman, a public employee had openly criticized her superiors in various forums, including a hearing on the environmental impact of a proposed airport expansion and a federal enforcement action against a local waste water treatment plant. She also wrote newspaper articles alleging corruption in her department. We noted several material inconsistencies between the inspector's public statements and her deposition in the lawsuit. Based on these inconsistencies, we determined that "a reasonable official could believe that [the employee] had knowingly or recklessly made false statements to the media and to the court," and therefore qualified immunity for the defendants was appropriate. Id. at 343.
 
 
 33
 The first point we note about defendants' argument is that it does not address Williams' statements that were critical of political patronage employment practices in general. These stated opinions cannot be considered false statements at this juncture. As to Williams' statements and reports about specific politically corrupt activities by employees at the Winchester DES office, defendants point to no proof in the record that Williams' comments were false statements. Unlike Gossman, where there were material inconsistencies between the employee's public statements and her deposition testimony, effectively admitting that important parts of her public statements were false, defendants here point to nothing in the record that contradicts Williams' statements and reports. Therefore, there is nothing from which we could infer that a reasonable official could have believed that Williams' statements were false statements knowingly or recklessly made.[3]
 
 
 34
 Having concluded that Williams' speech about political patronage and other corrupt activities involved matters of public concern, we turn to the second step in determining whether defendants could rightfully remove and demote Williams for this speech; i.e., whether Williams' interest is outweighed by the state's interest in promoting the efficiency of public services. Specifically, in the qualified immunity context, we must decide whether defendants reasonably could have believed that the harm to the office's efficiency outweighed Williams' interest in speaking freely. Gossman, 950 F.2d at 343 n. 2. In striking the balance, courts should consider whether an employee's comments meaningfully interfere with the performance of her duties, undermine a legitimate goal or mission of the employer, create disharmony among co-workers, impair discipline by superiors, or destroy the relationship of loyalty and trust required of confidential employees. E.g., Rankin, 483 U.S. at 388, 107 S.Ct. at 2899 (citing Pickering, 391 U.S. at 570-73, 88 S.Ct. at 1735-37); Stern v. Shouldice, 706 F.2d 742, 748 (6th Cir.), cert. denied, 464 U.S. 993, 104 S.Ct. 487, 78 L.Ed.2d 683 (1983).
 
 
 35
 In a rather conclusory fashion, defendants contend that a reasonable official could have believed that the state's interests outweighed Williams' interest in speaking on matters of public concern. They state:
 
 
 36
 Williams' pattern of verbal abuse of co-workers [and other misconduct] undermined the authority of her superiors, destroyed harmony and impaired working relationships within the office and interfered with the mission of the office and Williams' performance of her duties. Since Williams' departure, the efficiency of the Winchester office, the office's relationship with the community and the morale and teamwork of the office staff have all improved significantly. Williams' "right" to engage in unsubstantiated rumormongering can hardly be sufficient under [the balancing test] to outweigh the clear damage her verbal abuse caused to the Winchester DES office.
 
 
 37
 Brief for Defendants-Appellants at 32; see also Reply Brief of Defendants-Appellants at 16. The problem with this argument, besides being conclusory, is that it does not address what state interests were damaged by the speech for which Williams claims she was removed and demoted. Instead, defendants' argument focuses on the harms done by Williams' alleged mismanagement and verbal abuse of co-workers. In assessing whether certain speech should be protected under the balancing test of Pickering and its progeny, the focus is on the disruption resulting from the speech itself, not other events. See Solomon v. Royal Oak Township, 842 F.2d 862, 866 (6th Cir.1988).
 
 
 38
 As to Williams' statements criticizing the political patronage hiring and promoting practices, no reasonable official could have believed that the state's interest in efficient operations outweighed Williams' interest in commenting on these matters. There is no indication that Williams' expression of her opinion on these matters of public concern undermined working relationships in the office, interfered with her duties, or impaired discipline. As to Williams' statements and reports about specific instances of political patronage and politically corrupt practices in the office, there is one countervailing state interest. These statements and reports did have the effect of creating disharmony between Williams and the employees she reported, Gibson and Little. However, no reasonable official could conclude that this interest outweighed Williams' interest in reporting these instances of political misconduct. As we have stated, "when an employee exposes unscrupulous behavior in the workplace, his interests are co-extensive with those of his employer; both want the organization to function in a proper manner." Marohnic v. Walker, 800 F.2d 613, 616 (6th Cir.1986).
 
 
 39
 Defendants argue that because particularized balancing is necessary under Pickering and its progeny, they are entitled to qualified immunity because the contours of a public employee's free speech rights are unclear. See Benson v. Allphin, 786 F.2d 268, 276 (7th Cir.), cert. denied, 479 U.S. 848, 107 S.Ct. 172, 93 L.Ed.2d 109 (1986). Defendants also cite our statement in Meyers v. City of Cincinnati, 934 F.2d 726, 729 (6th Cir.1991), referring to the Pickering balancing test as a "somewhat imprecise standard." We agree that in many public employee free speech cases it would be unclear to a reasonable official what the outcome of the balancing inquiry should be. However, the instant case presents a situation where the employee has spoken out on matters of great public concern, and these statements apparently had only minimal effect on the efficiency of the office. In other words, this is not a case where the imprecision of the standard makes a difference.
 
 
 40
 Thus, we conclude that the contours of the public employee's right to be free from adverse employment action on the basis of protected speech were sufficiently clear in May 1990 and May 1991 (the time of Williams' removal and demotion) that a reasonable official would understand that taking such action on the basis of statements that were critical of political patronage employment practices and statements that she suspected that state employees were engaging in political patronage and other politically corrupt activities would violate that right. Connick made it clear in 1983 that such statements addressed matters of public concern. The only countervailing state interest is the disruption of the working relationship between Williams and two employees, and no reasonable official, in light of opinions of this court and others, could conclude that this interest outweighed Williams' interest in speaking freely on matters of political patronage and political corruption. Therefore, defendants are not entitled to summary judgment on Williams' First Amendment, Sec. 1983 claim based on qualified immunity.
 
 
 41
 (2)
 
 
 42
 We now turn to the issue of whether, at the time she was demoted, Williams had a clearly established right to predemotion notice and hearing such that reasonable officials would know that not affording her notice and hearing before her demotion violated her rights under the Fourteenth Amendment. The Due Process Clause of the Fourteenth Amendment prohibits states from depriving individuals of life, liberty, or property without due process of law. Thus, as an initial matter, we must determine if Williams had a protected property interest in her position of Field Office Manager. "Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law....' " Cleveland Board of Education v. Loudermill, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985) (quoting Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). In order to create a property interest in a benefit, these "existing rules or understandings" must give the recipient "a legitimate claim of entitlement to" the benefit. Roth, 408 U.S. at 577, 92 S.Ct. at 2709. Statutes providing that state employees cannot be discharged or demoted without cause clearly give the employee a protected property interest in continued employment. See Loudermill, 470 U.S. at 538-39, 105 S.Ct. at 1491-92.
 
 
 43
 The Kentucky statutory scheme creates a property interest in continued employment for employees such as Williams. A Kentucky statute provides that "[a] classified employee with status shall not be dismissed, demoted, suspended, or otherwise penalized except for cause." Ky.Rev.Stat.Ann. Sec. 18A.095(1). Williams was in the classified service and she had "status."[4] Therefore, Williams could not be demoted without cause, and accordingly she had a protected property interest in her job as Field Office Manager. The Kentucky statutory scheme is clear, and the Supreme Court cases decided before Williams' demotion are clear that such statutes create property interests protected by the Fourteenth Amendment. Thus, a reasonable official could not have concluded that Williams did not have a protected property interest in her job.
 
 
 44
 Because Williams had a property interest in her job, she could not be deprived of this interest without due process. The Kentucky statutory scheme requires that an employee such as Williams be given notice and hearing before being discharged. However, when an employee such as Williams is demoted, the Kentucky statutes only require that the employee be given notice of the demotion; no hearing is required before the demotion. See Ky.Rev.Stat.Ann. Sec. 18A.095. The eighteen-page letter delivered to Williams on May 30, 1991, satisfies the Kentucky statutory notice requirement. Thus, the question becomes whether it was clearly established at the time of Williams' demotion that her federal right to due process included the right to more process than was accorded by Kentucky law; namely, notice of a pending decision to demote her and a hearing before being demoted.
 
 
 45
 The most closely analogous Supreme Court case, and the case on which the district court relied, is Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). In Loudermill, two school employees were terminated without being given any opportunity to respond before their terminations. The Court first determined that these public employees had a protected property interest in continued employment because a state statute provided that they could not be terminated without just cause. The Court then turned to considering what process was due. The Court stated that it had "described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing before he is deprived of any significant property interest.' " Id. at 542, 105 S.Ct. at 1493 (quoting Boddie v. Connecticut, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971) (emphasis in original)). The Court then held that it was well settled that "[t]his principle requires 'some kind of hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment." Id. 470 U.S. at 542, 105 S.Ct. at 1493 (citing Board of Regents v. Roth, 408 U.S. 564, 569-70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972), and Perry v. Sindermann, 408 U.S. 593, 599, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972)). The Court then supported this rule by balancing the competing interests.
 
 
 46
 The need for some form of pretermination hearing, recognized in these cases, is evident from a balancing of the competing interests at stake. These are the private interests in retaining employment, the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and the risk of an erroneous termination.
 
 
 47
 First, the significance of the private interest in retaining employment cannot be gainsaid. We have frequently recognized the severity of depriving a person of the means of livelihood. While a fired worker may find employment elsewhere, doing so will take some time and is likely to be burdened by the questionable circumstances under which he left his previous job.
 
 
 48
 Second, some opportunity for the employee to present his side of the case is recurringly of obvious value in reaching an accurate decision. Dismissals for cause will often involve factual disputes. Even where the facts are clear, the appropriateness or necessity of the discharge may not be; in such cases, the only meaningful opportunity to invoke the discretion of the decisionmaker is likely to be before the termination takes effect.
 
 
 49
 ....
 
 
 50
 The governmental interest in immediate termination does not outweigh these interests. As we shall explain, affording the employee an opportunity to respond prior to termination would impose neither a significant administrative burden nor intolerable delays. Furthermore, the employer shares the employee's interest in avoiding disruption and erroneous decisions; and until the matter is settled, the employer would continue to receive the benefit of the employee's labors. It is preferable to keep a qualified employee on than to train a new one. A governmental employer also has an interest in keeping citizens usefully employed rather than taking the possibly erroneous and counterproductive step of forcing its employees onto the welfare rolls. Finally, in those situations where the employer perceives a significant hazard in keeping the employee on the job, it can avoid the problem by suspending with pay.
 
 
 51
 Id. 470 U.S. at 542-46, 105 S.Ct. at 1493-95 (footnotes and citations omitted) However, the Court determined that although these considerations require some type of pretermination hearing, the hearing itself, at least where there are extensive post-termination procedures, need not be formal or elaborate and that it is enough if the tenured public employee is given "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Id. at 546, 105 S.Ct. at 1495.
 
 
 52
 Although Loudermill dealt with a termination of a public employee as opposed to a demotion of a public employee, as is presented by this case, Williams argues that "[t]he Loudermill Court made clear that neither the principle involved nor its ruling in that case were restricted to employment discharge cases, and, in fact, that both applied to deprivations of 'any significant property interest ' created by the state." Brief for Plaintiff-Appellee at 13. On the other hand, defendants argue that Loudermill cannot be mechanically applied to demotion cases because the balancing of interests performed by the Court was dependent on facts peculiar to termination of employment rather than mere demotion. Because the process due varies with the quality and extent of the deprivation of a property right, defendants conclude that Loudermill did not clearly establish that Williams had a right to notice and hearing before her demotion.
 
 
 53
 We agree with defendants that Loudermill cannot be mechanically applied to demotion cases. "Not every deprivation of liberty or property requires a predeprivation hearing or a federal remedy." Ramsey v. Board of Educ., 844 F.2d 1268, 1272 (6th Cir.1988). In fact, the Loudermill Court noted that "[t]here are, of course, some situations in which a postdeprivation hearing will satisfy due process requirements." Loudermill, 470 U.S. at 542 n. 7, 105 S.Ct. at 1493 n. 7 (citing Ewing v. Mytinger & Casselberry, Inc., 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950) and North Am. Cold Storage Co. v. Chicago, 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908)). Because determining what process is due in a given case involves the balancing of several interests, including the nature of the property interest involved, we cannot say that a reasonable public official should have known from the Loudermill case that its requirement of notice and hearing prior to termination of employment applied with equal force to a demotion. Therefore, we must determine if opinions of this court or others, as explained above, clearly establish that the Loudermill predeprivation requirements apply to demotions.
 
 
 54
 Williams points to two Sixth Circuit decisions in which, Williams argues, we "expressly or impliedly held Loudermill applicable to an employee's demotion." Brief for Plaintiff-Appellee at 14 n. 6. In Sewell v. Jefferson County Fiscal Court, 863 F.2d 461 (6th Cir.1988), cert. denied, 493 U.S. 820, 110 S.Ct. 75, 107 L.Ed.2d 42 (1989), a prison guard was demoted from sergeant to corrections officer. She filed an action alleging, among other things, that defendants "failed to provide her with a pre-deprivation hearing before her termination, as mandated by ... Loudermill." Id. at 467. We noted that the plaintiff's supervisor had met with plaintiff two days before her demotion and discussed the forthcoming demotion for 30 minutes. During this discussion, the supervisor advised the plaintiff of the pending decision to demote her, explained the reasons for her demotion, and provided her an opportunity to respond to his statements. Without discussing the applicability of Loudermill to demotion cases, we stated that "[t]his encounter satisfied the requirements of a pre-deprivation hearing mandated by Loudermill" and held that "[p]laintiff's suggestion that she was not properly accorded her pre-deprivation due process rights is in error." Id. at 468.
 
 
 55
 We treated the issue similarly in Hawks v. City of Pontiac, 874 F.2d 347 (6th Cir.1989). In that case, a police officer was demoted from lieutenant to sergeant because he broke a residency requirement. The collective bargaining agreement under which the plaintiff's employment was governed suggested that a violation of the residency requirement would be grounds for discharge. The plaintiff, his union representative, and the chief of police attended a pretermination conference, after which the chief notified the plaintiff of his decision to demote him. The plaintiff filed an action claiming that his procedural due process rights were violated. We noted that the Supreme Court in Loudermill had held that an employee with a property interest should receive notice and hearing before termination, and it was conceded that the officer had a property interest in his job. However, we held that the plaintiff's meeting with the chief of police at which he presented evidence "met the Loudermill pretermination hearing requirement." Id. at 350.
 
 
 56
 Hawks and Sewell can be read in several different ways. First, they can be read to mean that an employee with a property interest in his employment cannot be demoted without first being given a predemotion hearing. Both cases applied the Loudermill predeprivation hearing requirement to a situation where the employee had only been demoted. Second, they can be read to mean that being removed from a higher employment position and placed in a lower employment position (i.e., a demotion) is equivalent to a termination from the higher employment position, and therefore the Loudermill pretermination requirements were applicable. Both cases spoke of the demotion as if it were a termination. The Sewell court summarized the plaintiff's claim by stating that defendants "failed to provide her with a pre-deprivation hearing before her termination," even though the plaintiff had not been discharged but rather demoted. Sewell, 863 F.2d at 467 (emphasis added). The Hawks court's holding was based on its finding that "the Loudermill pretermination hearing requirement" had been met. Hawks, 874 F.2d at 350 (emphasis added). However, the third and most plausible reading of those cases is that the courts did not decide whether Loudermill applied to demotions because even under the standards for termination cases set out in Loudermill, the plaintiffs did not have viable procedural due process claims. Neither case affirmatively states that employees with property interests in their jobs must be given notice and hearing before being demoted. Rather, both merely state the rule of Loudermill and determine that that rule was complied with in those cases. Therefore, Hawks and Sewell do not demonstrate that Williams had a clearly established right to notice and hearing before her demotion.[5]
 
 
 57
 Williams does not point to any other cases establishing such a right. The First and Fifth Circuits have indicated in dicta without discussion that they would apply Loudermill to demotions. See Mangaroo v. Nelson, 864 F.2d 1202, 1206 (5th Cir.1989) ("The defendants do not, and indeed reasonably cannot, challenge the district court's finding that, because she was demoted without a prior hearing, Mangaroo was denied due process.") (citing Loudermill, 470 U.S. at 542, 105 S.Ct. at 1493); Rivera-Ruiz v. Gonzalez-Rivera, 983 F.2d 332, 334-35 (1st Cir.1993). Two published opinions of district courts from other circuits have balanced the competing interests and found that a tenured public employee is entitled to a Loudermill hearing before being demoted. See Williams v. City of Seattle, 607 F.Supp. 714, 720-21 (W.D. Wash.1985); DelSignore v. DiCenzo, 767 F.Supp. 423, 427-28 (D.R.I.1991). Therefore, the only authorities that clearly recognize a right to predemotion notice and hearing are the two district court opinions from Washington and Rhode Island. These decisions are not "so clearly foreshadowed by" Loudermill or opinions in this circuit "as to leave no doubt in the mind of a reasonable officer that" not giving a tenured employee notice and hearing before a demotion would violate the employee's due process rights. See Seiter, 858 F.2d at 1177.
 
 
 58
 Although Loudermill 's analysis should be applied to determine if Williams was entitled to a predeprivation hearing, it is not yet clear how this analysis would come out in the demotion setting as opposed to the discharge setting. Loudermill recognized that there are some property interests for which a postdeprivation hearing will satisfy due process, but by balancing the competing interests the Court found that a predeprivation hearing must be provided before a tenured public employee is discharged. In a demotion case the balance of competing interests may or may not compel a different result. Of course, a plausible argument can be made that our interpretation of Loudermill in Hawks and Sewell establishes a right to a predemotion hearing. However, the ambiguity of both of those cases on this issue would leave it unclear to a reasonable official whether a predemotion hearing is required by the Constitution or rather just happened to take place in those cases. When an official would have to guess at a case's meaning on a certain issue, that case does not clearly establish anything about that issue. Thus, we cannot say that the unlawfulness of not providing a predemotion hearing would have been apparent to a reasonable official at the time Williams was demoted.
 
 
 59
 "The doctrine of qualified immunity recognizes that government officials need to be able to carry out their duties without fear of harassing litigation and that they can do so 'only if they reasonably can anticipate when their conduct may give rise to liability for damages....' " Garvie v. Jackson, 845 F.2d 647, 649 (6th Cir.1988) (quoting Davis v. Scherer, 468 U.S. 183, 195, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984)). Here, defendants could not reasonably anticipate that their following the requirements of the Kentucky statute and thereby failing to provide a predemotion hearing to Williams would give rise to liability for damages. Therefore, defendants are entitled to qualified immunity on Williams' procedural due process claim.
 
 B.
 
 60
 Defendants challenge the district court's grant of partial summary judgment to Williams on the merits of her procedural due process claim. This challenge is not mooted by our determination that defendants are entitled to qualified immunity on the procedural due process claim because qualified immunity only immunizes defendants from monetary damages, and Williams has also asked for injunctive relief against defendants in their official capacities.
 
 
 61
 We must first determine whether we have jurisdiction over the appeal of this issue. The courts of appeals have jurisdiction only when an appeal is taken from a "final decision" of the district court, 28 U.S.C. Sec. 1291, or from an interlocutory order appealable under 28 U.S.C. Sec. 1292. See, e.g., Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 431, 76 S.Ct. 895, 897, 100 L.Ed. 1297 (1956); Corrosioneering, Inc. v. Thyssen Envtl. Sys., Inc., 807 F.2d 1279, 1282 (6th Cir.1986). This appeal does not involve an order appealable under 28 U.S.C. Sec. 1292. Therefore, we must determine if the district court's grant of partial summary judgment to Williams was a "final decision" under 28 U.S.C. Sec. 1291.
 
 
 62
 Federal Rule of Civil Procedure 54(b) provides a means in multiple-party or multiple-claim actions, such as this case, by which appeals may be taken from final decisions on individual claims without waiting for final decisions on the rest of the claims. However, Rule 54(b) "does not relax the finality required of each decision, as an individual claim, to render it appealable." Mackey, 351 U.S. at 435, 76 S.Ct. at 899. In order to be certifiable under Rule 54(b), the decision on the individual claim must be "final" within the meaning of 28 U.S.C. Sec. 1291. Id. at 435, 437, 76 S.Ct. at 899, 900; Liberty Mut. Ins. Co. v. Wetzel, 424 U.S. 737, 742-43, 96 S.Ct. 1202, 1206, 47 L.Ed.2d 435 (1976); Seatrain Shipbuilding Corp. v. Shell Oil Co., 444 U.S. 572, 583 n. 21, 100 S.Ct. 800, 807 n. 21, 63 L.Ed.2d 36 (1980); Rudd Constr. Equip. Co. v. Home Ins. Co., 711 F.2d 54, 56 (6th Cir.1983) (per curiam); Corrosioneering, 807 F.2d at 1282.
 
 
 63
 Pursuant to Rule 54(b), the district court certified that there was no just reason for delay and that its judgment on the due process claim was final and appealable. However, this partial summary judgment only addressed the question of whether defendants violated Williams' procedural due process rights; it did not dispose of the issue of what relief was warranted for this violation. A decision is not "final" within the meaning of 28 U.S.C. Sec. 1291 where the awarding of relief remains to be resolved. E.g., Wetzel, 424 U.S. at 744, 96 S.Ct. at 1206. Because the district court's grant of partial summary judgment left the awarding of relief to be resolved, it was not a "final decision" within the meaning of 28 U.S.C. Sec. 1291, and therefore it was not certifiable under Rule 54(b). See Rudd Constr., 711 F.2d at 56. Thus, the district court's certification of the partial summary judgment as final and appealable under Rule 54(b) does not provide this court with jurisdiction over defendants' appeal of the partial summary judgment.
 
 
 64
 Defendants argue that because the merits of the procedural due process issue are intertwined with the qualified immunity issue, we should exercise "pendent appellate jurisdiction" over the grant of partial summary judgment on the due process claim. See Brown v. Grabowski, 922 F.2d 1097, 1106 n. 3 (3d Cir.1990), cert. denied, 501 U.S. 1218, 111 S.Ct. 2827, 115 L.Ed.2d 997 (1991); Drake v. Scott, 812 F.2d 395, 399 (8th Cir.), adhered to, 823 F.2d 239 (8th Cir.) (en banc), cert. denied, 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987). The Sixth Circuit has not adopted by name the "pendent appellate jurisdiction" doctrine. In fact, we have held that only the qualified immunity issue is immediately appealable. See Rich v. City of Mayfield Heights, 955 F.2d 1092, 1094 (6th Cir.1992). Nevertheless, "pendent appellate jurisdiction" would be inappropriate in this case because the grant of summary judgment is not inextricably intertwined with the qualified immunity issue. We have resolved the qualified immunity issue without addressing whether there was actually a due process violation. We merely held that Williams could not recover monetary damages against defendants in their individual capacities because it was not clearly established at the time of Williams' demotion that failing to provide predemotion notice and hearing would violate Williams' due process rights. In this case, our holding on qualified immunity has nothing to do with the merits of the due process claim. Furthermore, "pendent appellate jurisdiction" is a discretionary doctrine. This case presents uncertainties as to the actual holding of the district court. It is unclear whether the district court ever considered defendants' "new evidence" (i.e., the tape recording of the conversation on the day Williams was demoted), which they claim demonstrates that Williams was given a Loudermill hearing. By declining to exercise jurisdiction over this issue, we will allow the district court to decide in the first instance whether that conversation makes a difference in its analysis. Therefore, we will not exercise jurisdiction over this nonfinal order.
 
 C.
 
 65
 The district court held that claims for prospective injunctive and declaratory relief against the defendants in their official capacities were not barred by the Eleventh Amendment. The district court found that the declaratory and injunctive relief Williams requested in her Sec. 1983 claims, namely, reinstatement and expungement of all references to her demotion from her records, was prospective in nature, and therefore her Sec. 1983 action against the state officials in their official capacities was not completely barred by the Eleventh Amendment (i.e., the Sec. 1983 claims for injunctive and declaratory relief against defendants in their official capacities were not barred by the Eleventh Amendment). Defendants challenge this holding and also argue that the Eleventh Amendment bars Williams' state claims. The district court's determination that defendants were not entitled to Eleventh Amendment immunity is immediately appealable as a "final judgment" under the collateral order doctrine, and we therefore have jurisdiction over these Eleventh Amendment issues. Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., --- U.S. ----, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993). Because the question of whether Eleventh Amendment immunity applies is a question of law, we review the district court's determination on this issue de novo. Allen v. Purkett, 5 F.3d 1151, 1153 (8th Cir.1993) (per curiam).
 
 
 66
 Defendants rely on Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), to argue that Williams' claims for injunctive and declaratory relief against them in their official capacities are barred by the Eleventh Amendment. In Pennhurst, the Supreme Court held that the Eleventh Amendment forbids federal courts from enjoining state institutions and state officials on the basis of state law and that the doctrine of pendent jurisdiction does not override the Eleventh Amendment. Id. at 121, 104 S.Ct. at 919.
 
 
 67
 Following Pennhurst, we hold that the Eleventh Amendment bars Williams' state law claims insofar as they seek injunctive relief. However, neither the Eleventh Amendment nor Pennhurst deprives federal courts of jurisdiction over state law claims for damages against state officials sued in their individual capacities. Pena v. Gardner, 976 F.2d 469, 473-74 (9th Cir.1992) (per curiam); Wilson v. UT Health Ctr., 973 F.2d 1263, 1271 (5th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1644, 123 L.Ed.2d 266 (1993); Stephens v. American Home Assurance Co., 811 F.Supp. 937, 961-62 (S.D.N.Y.1993). Accordingly, Williams' state law claims for injunctive relief shall be dismissed, but her state law claims for damages against the defendants in their individual capacities will not be dismissed.
 
 
 68
 Defendants also argue that the Eleventh Amendment bars Williams' due process and free speech claims for prospective injunctive relief because the protected property interest must be derived from state law, and therefore the claim is based on state law and barred by the Eleventh Amendment under Pennhurst. Defendants are correct that property interests protected by due process are not created by the Constitution but rather by "existing rules or understandings that stem from an independent source such as state law." Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). However, the fact that we must analyze state law to determine if Williams has a property right in her job does not turn her constitutional claim into a state claim barred by Pennhurst. See Spruytte v. Walters, 753 F.2d 498, 514 (6th Cir.1985), cert. denied, 474 U.S. 1054, 106 S.Ct. 788, 88 L.Ed.2d 767 (1986); Cassidy v. Adams, 872 F.2d 729, 732 (6th Cir.1989). Determining if Williams has a property interest in her job is merely a prerequisite to resolution of the substantive constitutional question of whether Williams was deprived of due process. Williams' action under 42 U.S.C. Sec. 1983 for the violation of her due process and free speech rights guaranteed by the Fourteenth and First Amendments to the United States Constitution cannot be characterized as an action based on state law. The Eleventh Amendment does not bar Sec. 1983 actions brought against state officials in their official capacities seeking prospective injunctive relief. E.g., Wolfel v. Morris, 972 F.2d 712, 719 (6th Cir.1992) (citing Kentucky v. Graham, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3105 n. 14, 87 L.Ed.2d 114 (1985); Ex Parte Young, 209 U.S. 123, 159-60, 28 S.Ct. 441, 453-54, 52 L.Ed. 714 (1908)). Therefore, Williams' Sec. 1983 claims against the defendants in their official capacities for declaratory and prospective injunctive relief will not be dismissed.
 
 III.
 
 69
 Defendants are not entitled to qualified immunity on Williams' First Amendment claim. It was clearly established that the speech Williams cites as the reason for her demotion addressed matters of public concern. Furthermore, no reasonable official could believe that Williams' interest in speaking freely on these matters of public concern was outweighed by the state's interest in preventing conflicts between Williams and the employees allegedly involved in the political corruption. Accordingly, the district court's denial of defendants' motion for summary judgment on the First Amendment Sec. 1983 claim on the basis of qualified immunity is AFFIRMED. However, we express no view as to the eventual outcome of Williams' First Amendment claim.
 
 
 70
 Defendants are entitled to qualified immunity on Williams' procedural due process claim because it was not clearly established at the time of her demotion that a tenured public employee had a due process right to a predemotion hearing. Accordingly, the district court's denial of defendants' motion for summary judgment on Williams' procedural due process Sec. 1983 claim based on qualified immunity is REVERSED. Williams cannot pursue her due process claim for money damages against defendants in their individual capacities.
 
 
 71
 We have no jurisdiction over defendants' appeal of the district court's grant of partial summary judgment to Williams on the merits of her procedural due process claim because the grant of partial summary judgment was not a "final decision." Accordingly, defendants' appeal of the district court's grant of partial summary judgment is DISMISSED.
 
 
 72
 As to defendants' challenge to the district court's Eleventh Amendment rulings, we hold that the state law claims insofar as they seek injunctive relief are barred by the Eleventh Amendment under Pennhurst and are therefore DISMISSED. However, the Eleventh Amendment does not bar Williams' Sec. 1983 claims for declaratory and prospective injunctive relief against defendants in their official capacities, and accordingly those claims are not dismissed.
 
 
 
 *
 The Honorable William H. Timbers, Senior Circuit Judge of the United States Court of Appeals for the Second Circuit, sitting by designation
 
 
 [1]
 Williams named many defendants: the Commonwealth of Kentucky and the Cabinet for Human Resources, Williams' employer; P. Kenneth Cox, the Director of DES and Williams' first line supervisor; Margaret Whittet, the Commissioner, Acting Commissioner, and Deputy Commissioner of DES and Williams' second line supervisor; Frank J. Willey, the Acting Director of the Division of Personnel Management and Appointing Authority for the Cabinet for Human Resources; John Hodgkin, the Director and Assistant Director of Division for Field Services of DES and Williams' first line supervisor; Darvin Allen, the Commissioner of DES and Williams' second line supervisor; Ronald Holland, the Principal Assistant to the Commissioner of DES; Lynne McWilliams, the Acting Director of the division of Personnel Management and Appointing Authority for the Cabinet for Human Resources
 
 
 [2]
 Because the Commonwealth of Kentucky and the Cabinet for Human Resources were dismissed as defendants, we use "defendants" to refer collectively to the individual defendants
 
 
 [3]
 Williams did admit that she "couldn't prove anything about selling jobs for any worker" and that she had heard rumors about those activities for twenty years. J.A. 467. However, this does not contradict her statements that she suspected certain employees were selling jobs. Furthermore, it does not show, or even indicate, that those employees were not selling jobs. All Williams' admission shows is that she may not have had a substantial basis for making her statements that certain employees were selling jobs. This would be relevant only if her statements were actually false. On this important point, defendants have made no showing
 
 
 [4]
 " 'Status' means the acquisition of tenure with all rights and privileges granted by the provisions of this chapter after satisfactory completion of the initial probationary period by an employee in the classified service." Ky.Rev.Stat.Ann. Sec. 18A.005(31)
 
 
 [5]
 In an unpublished opinion affirming "upon the opinion of the district court," we considered the applicability of Loudermill to fact situations other than termination of employment. Germano v. City of Mayfield Heights, 833 F.2d 1012 (6th Cir.1987) (unpublished), aff'g, 648 F.Supp. 984 (N.D. Ohio 1986). In that case, the plaintiff had been deprived of sixteen days of sick leave, valued at $1,768, and a $166.60 clothing allowance without an opportunity to respond before the deprivation. The district court held that for the Loudermill predeprivation notice and hearing requirements to attach "there must be a significant property interest at stake." 648 F.Supp. at 985
 Whether a property interest is "significant" or "insignificant" will have to be decided by the courts on a case-by-case basis. Under the facts in the present case, this Court holds that the alleged property interests involved--sick leave and the clothing allowance of a police officer--are not of such a significant nature that a predeprivation proceeding is required. Post-deprivation proceedings satisfy due process in this case.
 Id. at 986. This case-by-case inquiry further counsels that the right of predeprivation hearing before a demotion was not clearly established in the Sixth Circuit at the time of Williams' demotion. There is no Sixth Circuit case holding that the property interest involved in demotions is significant.