**Ray HAWKS, Plaintiff–Appellant,**

v.

**CITY OF PONTIAC and Reginald Turner, Jointly and Severally, Defendants–Appellees.**

No. 88–1159.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 9, 1989.

Decided May 3, 1989.

Glen N. Lenhoff (argued), Flint, Mich., for plaintiff-appellant Raymond Hawks.

Gail P. Massad (argued), Thomas Laginess, Livonia, Mich., for defendant-appellee City of Pontiac.

Thomas Laginess, Livonia, Mich., for defendant-appellee Reginald Turner and defendants Darrel Carie and Robert Burns.

Before MERRITT and NELSON, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

MERRITT, Circuit Judge.

The plaintiff, Ray Hawks, appeals from the District Court's grant of summary judgment to the City of Pontiac and to Reginald Turner, the Police Chief, in this § 1983 action arising from the demotion of Hawks from Police Lieutenant to Police Sergeant. Hawks raises three issues on appeal: 1) whether the residency requirement of the collective bargaining agreement between the City and the policemen's union which adopts the City Charter's residency provision is unconstitutionally vague; 2) whether he was deprived of his constitutional right to due process when he was denied a hearing before the City Council prior to his demotion; and 3) whether the City of Pontiac has applied its residency requirement in a discriminatory manner in violation of the equal protection clause. The District Court found that no constitutional violations occurred. We agree.

I.

Hawks is a white, twenty-year veteran of the Pontiac Police Department. He joined the department in May 1966. Hawks was promoted to the position of Sergeant in 1979 and then to the position of Lieutenant in 1984. For several years prior to July 1985, Hawks lived outside the City of Pontiac. In July 1985 Hawks moved back into the City of Pontiac where he resided until December 1985 when he again moved outside the City. He was demoted to Sergeant in May 1986 because he violated § 6.103 of the Pontiac City Charter concerning residency, a provision incorporated in § 8 of

the collective bargaining agreement.[1] The residency section had been the subject of dispute resolved when the City and the police union submitted the residency issue to binding arbitration in March 1983.

It is undisputed that Hawks moved from inside the City of Pontiac to Orion Township in December 1985. Reginald Turner, the Chief of Police, demoted Hawks from Lieutenant to Sergeant because he violated the provisions of his employment contract between the Pontiac Police Supervisor's Association and the City.

When Turner learned that Hawks might be involved in a violation of the residency provision, Turner ordered an investigation. The investigation revealed that from December 1985 to February 28, 1986, Hawks lived outside the City limits. Hawks submitted a written letter to the Pontiac City Council explaining the reasons for his move and requesting withdrawal of his previous request for a "waiver" hearing before the City Council. Hawks maintains that he took this action under "coercion" from Turner. Hawks also submitted written answers to questions regarding his residency.

Hawks, his union representatives, and Turner attended a pretermination conference on May 22, 1986, after which Turner notified Hawks of Turner's decision to demote Hawks. Hawks later filed a grievance pursuant to his labor agreement with the Police Department. His grievance was denied after a full hearing on November 17, 1986.

## II.

Hawks argues that he understood the residency provision to preclude promotion if he moved out of the City, but that a move out of the City would not subject him to demotion. Pointing to this misunderstanding, he asserts that the incorporation of the residency provision of the City Charter into the collective bargaining agreement allows a constitutional challenge to the charter provision on vagueness grounds.

Although neither the residency provision of the charter nor the agreement is a model of clarity, we agree with the District Court that Hawks has no valid vagueness claim. The residency requirement is called into question because of its enforcement as a contractual term in a collective bargaining agreement and as such is subject to interpretation under the grievance procedure provided by the collective bargaining agreement. As a contract provision entered into through voluntary collective bargaining, it may not be characterized as a positive law subject to due process chal-

---

1. The relevant portion of the City Charter referred to in the Collective Bargaining Agreement (Section 6.103 of the Pontiac City Charter) provides as follows:

   Residency

   An appointee (other than to a board or commission) or an employee of the City, if not a resident at the time of the appointment or hire, shall become a resident within one year thereafter and shall remain a resident while so employed. Violations of this requirement by an appointee or employee shall be grounds for dismissal from employment.

   The continued employment of an employee employed before the effective date of this charter is not subject to this requirement, but compliance with the requirement shall be a condition to the promotion of any such employee.

   Upon a specific finding that the interests of the City and its residents would be best served in a given case by granting relief from this section, 5 members of the City Council, subject to the Mayoral veto contained in Section 3.112(f) may grant appropriate relief.

   The relevant provision of the collective bargaining agreement is as follows:

   Section 8. Residency

   The Charter's May 3, 1982 residency provision is incorporated into the Pontiac Police Supervisor Association Agreement with the following exceptions:

   1. Any officer may be promoted even if living outside of the city limits of Pontiac, if at the time of this Agreement he or she is an owner of a home outside the City in which he/she resides.

   2. Any officer who is not a homeowner but lives outside of the city limits of Pontiac still retains the opportunity to be promoted; however, if said officer moves subsequently, said officer must comply with the Charter.

   3. Any officer who after the adoption of this Award lives outside of Pontiac in a home he/she owns, and then sells his/her home and continues to live outside of Pontiac, will be subject to the provisions of the Charter as adopted.

   4. Any officer presently residing within the City must comply with the Charter.

lenge for vagueness. Its interpretation and clarification is subject to the grievance and arbitration process. Hawks took his claim through this process, and it was denied.

The standard of review in arbitration cases is narrow. *Anaconda Co. v. Dist. Lodge No. 27 of Int'l Ass'n of Machinists*, 693 F.2d 35 (6th Cir.1982). Even if this Court were to construe the residency requirement differently, the arbitrator's decision should be upheld unless it fails to "draw its essence from the collective bargaining agreement." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). Consequently, we find no error in the arbitrator's decision and no validity to the vagueness claim.

### III.

Hawks maintains that he was entitled to a "waiver" hearing before the City Council prior to his demotion from the position of Lieutenant. He claims that Turner "forbade" him from introducing all relevant information before the City Council, specifically information about his relationship with Tim Carie, the former husband of Hawks' wife. Hawks maintains that he moved away from the City to put distance between his family and Carie for safety reasons and that if Hawks had been allowed to place this information before the City Council, these facts would have mitigated his demotion punishment.

Hawks' basic claim here is a procedural due process claim. He maintains that he was denied procedural due process because Turner's actions denied him a state-created procedural right to appear personally before the City Council.

■ Because this case comes before us on summary judgment, we accept as true Hawks' version of the facts. *See* Fed.R. Civ.P. 56. It is conceded that Hawks had a property interest in his job. The Supreme Court in *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985), held that before termination an employee with a property interest should receive "oral or written

notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546, 105 S.Ct. at 1495. Hawks' May 22, 1986 meeting with Turner, at which union representatives were present and at which Hawks presented evidence including that relating to Carie, met the *Loudermill* pretermination hearing requirement.

■ Assuming arguendo that Hawks was entitled under the City Charter or other state laws to present his case personally before the City Council in addition to his pretermination right-of-reply hearing, we must determine as a matter of federal procedural due process whether state corrective procedures are adequate.

Procedural due process requires not a certain outcome but rather state procedures to remedy legitimate grievances. Hawks has failed to meet his burden of showing that Michigan lacks such procedures. Instead our research suggests that the doors of Michigan courts are open to Hawks and the procedures for review adequate. He had a right to grieve Police Chief Turner's decision. Hawks took his case to arbitration, and his grievance was denied. Moreover, under the Firemen and Policemen Civil Service System, Mich. Comp.Laws Ann. §§ 38.501 *et seq.* (West Supp.1988), review procedures are available and an appeal may be taken from an adverse discharge decision to the circuit court of the county in which the city is situated. *See Campbell v. City of Allen Park*, 829 F.2d 576 (6th Cir.1987) (city worker who was discharged after she moved outside city appealed decision through review procedures available under the Firemen and Policemen Civil Service System which included appeal to state circuit court); *Shelby Township Fire Dept. v. Shields*, 115 Mich.App. 98, 320 N.W.2d 306 (1982) (fire fighter medic appealed his discharge from the Shelby Township Police and Fire Fighters Civil Commission's decision to circuit court and then to the court of appeals).

The plaintiff has the burden of showing the inadequacy of his remedies under state

law. *See Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Vicory v. Walton,* 721 F.2d 1062, 1065–66 (6th Cir.1983), *cert. denied,* 469 U.S. 834, 105 S.Ct. 125, 83 L.Ed.2d 67 (1984). Hawks has not carried this burden. He has cited no authority to show that Michigan does not provide adequate procedures to remedy grievances of this kind, and he has not demonstrated that procedures used in the past would be futile in his case. Consequently, we must conclude that Hawks has no federal cause of action against the defendants on procedural due process grounds.

## IV.

Hawks maintains that the City of Pontiac applied its residency rule more vigorously to cases involving white officers than to cases involving black officers. The affidavit of Police Officer David Bush forms the basis of Hawks' claim of discriminatory treatment: in that affidavit Bush stated that Willie Payne, a black police officer, violated the residency provision without being punished. Hawks maintains on appeal that this affidavit suffices to raise a material issue of fact. We disagree. The record reflects that Officer Payne was a member of a different bargaining unit with a different residency provision. Obviously, the City of Pontiac is not liable for alleged discrimination in this case when the issue presented is the enforcement of the provisions of a collective bargaining agreement different from the one under which Hawks worked.

We conclude, as the District Court did, that Hawks has presented no material issue of fact; consequently, summary judgment is appropriate. Accordingly, the judgment of the District Court is affirmed.