904 F.2d 36
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
TOLEDO POLICE PATROLMAN'S ASSOCIATION, et al., Plaintiffs-Appellants,
v.
CITY OF TOLEDO, et al., Defendants-Appellees.
 No. 89-3524.
 United States Court of Appeals, Sixth Circuit.
 June 1, 1990.
 
 Before WELLFORD and BOGGS, Circuit Judges, and HORACE W. GILMORE, District Judge.*
 PER CURIAM.
 
 
 1
 Pursuant to an internal affairs investigation into an assault committed in Toledo, Ohio, two Toledo police sergeants picked up two Toledo police officers at their homes, brought them to the police station, and questioned them. The two police officers, along with the police union, on behalf of all similarly situated police officers, sued the two sergeants, the Toledo Police Chief, various Toledo city officials, and the city of Toledo itself, alleging that the sergeants' actions violated the police officers' constitutional rights.
 
 
 2
 The district court directed a verdict for the Police Chief, city officials, and the city, finding that the sergeants' actions were not based on a municipal policy. The district court granted judgment NOV for the two sergeants, finding that they did not violate clearly established constitutional rights, and thus were entitled to immunity for their actions. The district court also imposed sanctions against the plaintiffs for a discovery violation. The plaintiffs appealed all three rulings. Finding no error in the decision of the district court, we affirm it in all respects.
 
 
 3
 * On or about September 3, 1986, a pedestrian was assaulted in a park in Toledo, Ohio. On that evening, Officers Charles Nearhood and David O'Brien of the Toledo Police Department were assigned as partners in a van to patrol a section of Toledo that included the park.
 
 
 4
 Sergeant Ronald Navarro of the Toledo Police Department was assigned to investigate the assault. During the course of the investigation, one witness stated that he had seen two police officers "using their night sticks to hit a black male." Another witness indicated that he had observed a van in a parking lot along the side of the park, and presumed that it was a police van; however, it apparently did not have Toledo police markings.
 
 
 5
 On September 20, 1986, Navarro interviewed both Nearhood and O'Brien in connection with the investigation. At that time, Navarro reviewed the "dispatch cards" and the officers' activities for the night of September 3. On September 22, 1986, both officers were ordered to report to Internal Affairs. At that time, Lt. Thomas Gulch asked them to complete a supplemental report about their activities.
 
 
 6
 On September 24, 1986, Deputy Chief of Police Vetter determined that it was necessary to interview all members of van patrols immediately, beginning with Nearhood and O'Brien. On that day, both Nearhood and O'Brien were on leave, and were not scheduled to return for two days. Deputy Chief Vetter determined that questioning could not be delayed that long. Both Nearhood and O'Brien admit that Toledo police officers are subject to being recalled to active duty at any time.
 
 
 7
 That same afternoon, Navarro and Sgt. Frank Stiles went to Nearhood's home and ordered him to get dressed and come downtown with them. Nearhood offered to drive, but Navarro and Stiles rejected this suggestion. Navarro, Stiles, and Nearhood then drove to O'Brien's home.
 
 
 8
 While Nearhood waited in the car, Navarro and Stiles went into O'Brien's home and asked O'Brien to come downtown with them. O'Brien had apparently finished playing a game of tennis, and wanted to shower first. Navarro and Stiles refused to allow him to do this, and after several protestations by O'Brien, O'Brien got dressed and went to the Toledo Safety Building with Navarro, Stiles, and Nearhood.
 
 
 9
 Nearhood and O'Brien were taken through the basement of the building (a route apparently used to escort prisoners into the building) and into an interrogation room which is commonly used as a holding cell for prisoners. This interrogation room is in a different part of the Safety Building from the Internal Affairs Section, the site of the previous interviews.
 
 
 10
 Apparently, Nearhood and O'Brien were interviewed separately. Stiles indicated to Nearhood that the interview was to be taped. Nearhood requested either that he be given a Miranda warning, or that he be allowed to talk with a representative from the Toledo Police Patrolman's Association, Local 10, I.U.P.A., the local police union. Initially, Stiles stated that the president of the police union would be present. A short time later, however, Navarro told Nearhood that he had spoken with John Mason, the Chief of Police, who concluded that Nearhood did not have the right to have a union representative present, since this was a "criminal investigation."
 
 
 11
 O'Brien asserts that, during his interview, Stiles and Navarro attempted to "intimidate" him by telling him that he was involved in a felonious assault investigation which could turn into a homicide investigation. No criminal or administrative charges, however, were brought against either O'Brien or Nearhood. Both O'Brien and Nearhood, ultimately, after protest, received overtime pay for the hours involved in transportation and questioning.
 
 
 12
 On October 8, 1986, the police union, O'Brien, and Nearhood, on behalf of all similarly situated police officers, sued Stiles, Navarro, Mason, the City of Toledo, and various city officials for deprivation of liberty without due process of law and for an unreasonable seizure. The plaintiffs also sued for the tort of false arrest under Ohio law.
 
 
 13
 The defendants filed a motion to compel discovery on January 27, 1988. Apparently, the defendants served this motion in a large box of documents which, although related to the case, were unrelated to the specific motion. Plaintiffs apparently overlooked the motion and failed to respond. On February 23, the court ordered plaintiffs to produce the requested discovery by February 28, but the plaintiffs still did not respond. Defendants filed a motion for sanctions on March 3, 1988, premised on plaintiffs' failure to respond to their motion to compel discovery. Apparently, plaintiffs provided the discovery on March 10. On March 18, however, the court granted the defendants' motion for sanctions.
 
 
 14
 The case went to trial. At the conclusion of the plaintiffs' case, defendants moved for a directed verdict. They argued that, inter alia, no policy or custom existed which would implicate Mason, the city of Toledo or city officials in the actions of Stiles and Navarro. The court directed a verdict for these defendants.
 
 
 15
 The case against Stiles and Navarro proceeded to the jury. The jury found that these police sergeants had violated the plaintiffs' fourth and fourteenth amendment rights, in violation of 42 U.S.C. Sec. 1983. The jury, however, returned a verdict for the defendants on the plaintiffs' false arrest claims under Ohio law. The defendants then moved for judgment NOV.
 
 
 16
 The court granted defendants' motion for judgment NOV, stating that the interview occurred in the employment context, and that any constitutional rights that were violated in this context were not so clearly established so as to deprive Stiles and Navarro of immunity for their actions. The plaintiffs timely appealed.
 
 II
 
 17
 The court directed a verdict for Mason, the city of Toledo, and city officials. The court had found that no policy or custom existed that would implicate these defendants in the allegedly illegal actions of Stiles or Navarro. Monell v. Department of Social Services of the City of New York, et al., 436 U.S. 658 (1978). The plaintiffs assert that this finding is erroneous, since, at trial, Mason said that
 
 
 18
 I think it is inherent in the responsibility of the law enforcement organization and their rights to conduct the business of that association that they have--the administration has the authority to compel a police officer to report to the station house, answer questions, submit to an interview or interrogation with regards to his performance of duty.
 
 
 19
 The plaintiffs assert that Mason's statement creates a "policy or custom" under Monell, and thus implicates Mason, the city, and certain city officers in the allegedly illegal actions of Stiles and Navarro. We disagree.
 
 
 20
 Mason's statement simply points out that police officers may be called to duty at any time, and, as a part of that duty, may be questioned about their activities. Such questioning, absent more, is certainly not illegal, and is consistent with the duties of a police officer. Even assuming that Mason's statement does create a city policy, any illegal action allegedly committed by Stiles or Navarro (such as a failure to give a Miranda warning) is not explicitly within this policy as stated by Mason. Thus, viewing the evidence in the light most favorable to the plaintiffs, and giving them the benefit of all reasonable inferences, we find that the district court did not err by directing a verdict for Mason, the city of Toledo, and the named city officials.
 
 III
 
 21
 On appeal, the plaintiffs contend that the district court erred in granting judgment NOV to Stiles and Navarro. We disagree. The district court correctly found that the interviews were performed in the employment context. The officers were paid overtime for their participation, and it was clearly part of their duties as Toledo police officers to participate fully in internal investigations. See Toledo Municipal Code, Sec. 2129.19.C.
 
 
 22
 The plaintiffs contend that the interviews, if done within the employment context, violated a number of provisions in the Toledo Municipal Code, Sec. 2129.19:
 
 
 23
 A. An employee has the right to the presence of counsel and/or a representative of his recognized bargaining unit....
 
 
 24
 B. An employee who is to be questioned as a suspect in any investigation of any criminal charge against him shall be advised of his Constitutional Rights before any questioning.
 
 
 25
 C. Before an employee may be charged with any violation of the Divisional Rules and Regulations for a refusal to answer questions or participate in an investigation, he shall be advised that his refusal to answer questions, or participate in such investigation, may be made the basis of such a charge.
 
 
 26
 D. Any interrogation, questioning or interview shall be conducted at a reasonable hour, preferably while the employee is working.....
 
 
 27
 * * *
 
 
 28
 * * *
 
 
 29
 M. When any employee is to be interviewed in an investigation of any other member of the Police Division, such interview shall be conducted in accordance with the procedures established herein.
 
 
 30
 As an initial matter, it is not clear that a violation of these municipal code provisions (if, in fact, a violation occurred) rises to the level of a denial of constitutional due process. See Hawks v. City of Pontiac, 874 F.2d 347 (6th Cir.1989). Even if a violation did occur, and it was of constitutional dimensions, these constitutional rights were not so "clearly established" as to deprive Navarro and Stiles of qualified immunity under Harlow v. Fitzgerald, 457 U.S. 800 (1982).
 
 
 31
 We find no support for plaintiffs' allegation that the officers were under arrest. In any event, a failure to give Miranda warnings is not an independent constitutional tort, but rather serves only to exclude evidence taken in the interview. See Warren v. City of Lincoln, Neb., 864 F.2d 1436, 1442 (8th Cir.1989). Thus, Stiles and Navarro cannot be held liable for a failure to give the warning. Viewing the evidence in the light most favorable to the plaintiffs, and giving them the benefit of all reasonable inferences, the district court did not err in granting judgment NOV to Stiles and Navarro.
 
 IV
 
 32
 The plaintiffs also argue that the district court abused its discretion when it imposed sanctions under Rule 37(b), Fed.R.Civ.P. In particular, they contend the district court should have taken into account the difficulties both parties had in completing discovery within the given time frame. Further, they note that the defendants had served their January 27, 1988 motion to compel discovery upon plaintiffs in a large box, full of unrelated records from Internal Affairs which plaintiffs had requested. The plaintiffs contend that they could not have noticed the motion in time, unless they had immediately examined all the documents which were sent.
 
 
 33
 Upon review of the record, however, we cannot say that the district court abused its discretion in imposing sanctions. We note that the defendants' request for discovery was filed in July 1987; the plaintiffs should have been on notice at that time that certain information was desired by the defendants. On January 27, 1988, the defendants moved for an order compelling discovery; the plaintiffs contend that they overlooked this motion in a large box of documents.
 
 
 34
 Even if the plaintiffs' failure to find this motion can be excused, they received another reminder of their failure to provide discovery on February 23. On this date, the district court issued an order to provide discovery, ordering compliance within five days. February 28 was a Sunday. The plaintiffs waited until Monday, February 29 to object to the discovery or request an extension.
 
 
 35
 The court overruled the plaintiffs' objections and denied the request for an extension. The plaintiffs provided the requested discovery on or about March 10. Although the plaintiffs provided the discovery prior to the imposition of sanctions, they only provided it after failing to comply with the district court's specific order to provide discovery within five days of February 23. Accordingly, the imposition of sanctions is affirmed.
 
 
 
 *
 The Honorable Horace W. Gilmore, United States District Judge for the Eastern District of Michigan, sitting by designation