917 F.2d 1304
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Roger BRAMLEY, Plaintiff-Appellant,
v.
Eric R. KNUDSON, et al., Defendant-Appellee.
 No. 89-3940.
 United States Court of Appeals, Sixth Circuit.
 Nov. 2, 1990.
 
 Before MILBURN, BOGGS and SUHRHEINRICH, Circuit Judges.
 BOGGS, Circuit Judge.
 
 
 1
 Roger Bramley appeals from the district court's judgment in favor of the defendants, after a bench trial, in Bramley's Sec. 1983 suit alleging that Bramley was deprived of his job with the City of Willoughby, Ohio, without due process of law. Because we believe that Bramley received all of the process that was constitutionally due him, we affirm the district court's judgment.
 
 
 2
 * Bramley was hired by the City of Willoughby on August 20, 1980. Bramley alleged that he was hired as an Electrical Inspector III, while the City contended that he was hired as a Deputy Building Inspector III. Either of these job classifications is a civil service position, and, under Ohio law, permanent civil servants may be terminated only for cause and may obtain an administrative review if terminated. Ohio Rev.Code Sec. 124.34. Bramley was terminated on August 18, 1981.
 
 
 3
 Bramley's tenure with the City of Willoughby was stormy. He was accused of citing an auto body repair shop for nonexistent violations of the electrical code in order to "get even" with the owner. He was also accused of being rude to the public. For example, he told the owner of a business in Willoughby that "[i]t would be a cold day in hell before you open Monday." Bramley's supervisor, Gene Barnes, believed that Bramley had lied to him when Bramley denied saying this to the business owner. Bramley denies these accusations. He was also accused of using profanity around the office, and of speeding in a city-owned inspection vehicle.
 
 
 4
 Based on these occurrences, and Bramley's general unwillingness to extend his expertise beyond electrical inspection, Barnes met with Bramley approximately one month before his termination. Barnes stated that he advised Bramley of the accusations. Barnes also stated that he advised Bramley that he believed both the accusations and that Bramley's performance was unsatisfactory. Barnes stated that he reminded Bramley that he was still on probationary status and informed him that he would have to improve his performance.
 
 
 5
 Barnes remained displeased with Bramley's performance and wrote a memorandum to the Mayor of Willoughby, Eric Knudson, recommending termination. On August 18, 1981, the Mayor met with Bramley and informed him that he was going to be terminated. Bramley appealed the Mayor's decision, as was his right under the Willoughby Civil Service Rules, to the Civil Service Commission. On September 22, 1981, the Commission heard Bramley's appeal. Bramley and his attorney had the opportunity to cross-examine Barnes about his recommendation to the Mayor. On September 29, 1981, the Commission voted unanimously to uphold the Mayor's termination of Bramley.
 
 II
 
 6
 Before we proceed to the main part of our opinion, we must dispose of one of Bramley's arguments on appeal. Bramley's suit alleged that he was deprived of a "property interest," to wit, his job, without due process of law. However, probationary employees do not possess a "property interest" that requires the protection of fourteenth amendment due process before it may be removed. Matulin v. Village of Lodi, 862 F.2d 609 (6th Cir.1988); Booher v. U.S. Postal Service, 843 F.2d 943 (6th Cir.1988); Bergman v. Bowling Green State University, 820 F.2d 1224 (6th Cir.1987); McKendry v. Union Township, Butler County, Ohio, 633 F.Supp. 188 (S.D.Ohio 1986). The City and Bramley vehemently disagree about his status, Bramley obviously contending that he was not a probationary employee.
 
 
 7
 Bramley alleged that his probationary period was three months, while the City contended that it was one year. The City relied on the job classification of a Deputy Building Inspector III, which clearly carried a one-year probationary period. Bramley alleged on appeal that the Rule X, Section 1 of the Civil Service Rules of the City of Willoughby established a probationary term of three months for all civil service employees. That period could not be amended through the creation of a job classification, Bramley alleged, because Rule XIX, Section 1 of the Rules provides that the Rules can only be amended by a vote of the Civil Service Commission at a meeting at least seven days after the original proposal to amend is made, and following a public hearing. This procedure was not followed when the job classification of Deputy Building Inspector III was created. Thus, Bramley contends, he was a permanent civil service employee whose employment was protected by the fourteenth amendment.
 
 
 8
 We do not pause to resolve this dispute because we hold that even if we assume that Bramley was a permanent employee, he received due process under the Constitution.
 
 III
 
 9
 The Supreme Court established the process that must be provided before depriving someone of a property interest in Cleveland Bd. of Education v. Loudermill, 470 U.S. 546, 105 S.Ct. 1487 (1985). The Court stated that a person in a permanent civil service position is entitled to a pre-termination hearing affording the employee "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story," Loudermill, 470 U.S. 536, 105 S.Ct. at 1495. If no more than this is provided, a post-termination hearing more akin to a trial is subsequently required.
 
 
 10
 The Supreme Court has not detailed how specifically the charges against an employee must be spelled out in the pre-termination hearing other than to say that it need not be a "full evidentiary hearing." Ibid. This court has interpreted and applied Loudermill with the understanding that the pre-termination hearing is intended to help avoid gross mistakes. Accordingly, we have held that the pre-termination hearing is "essentially a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." Duchesne v. Williams, 849 F.2d 1004, 1007 (6th Cir.1988) (en banc) (quoting Loudermill, 470 U.S. at 545-46, 105 S.Ct. at 1495), cert. denied, 109 S.Ct. 1535 (1989). We have not required that the pre-termination hearing itself provide the employee with the catalog of charges against him and their factual bases when he was already aware of both the charges and their bases prior to the hearing. Creamans v. City of Roseville, 861 F.2d 878, 884 (6th Cir.1988) (plaintiff "clearly knew about the medical evidence the Board was relying on" before the pre-termination hearing), cert. denied, 109 S.Ct. 2065 (1989); Hawks v. City of Pontiac, 874 F.2d 347, 349 (6th Cir.1989) (plaintiff was aware of the one issue causing his demotion before the pre-termination hearing).
 
 
 11
 The Third Circuit's approach towards interpreting Loudermill is somewhat more stringent than our own. However, even their approach allows for the possibility that the charges and their bases need not have been supplied only at the hearing itself. In Gniotek v. City of Philadelphia, 808 F.2d 241, 244 (3d Cir.1986), cert. denied, 481 U.S. 1050, 107 S.Ct. 2183 (1987), the Third Circuit established that a notice of termination meets the Loudermill test if:
 
 
 12
 1) it apprises the vulnerable party of the nature of the charges and general evidence against him, and 2) if it is timely under the circumstances of the case.
 
 
 13
 Notice that allowed plaintiff "the opportunity to determine what facts, if any, within his knowledge might be presented in mitigation of or in denial of these charges" satisfied the Loudermill test. Ibid.
 
 
 14
 The district court found as a fact that the Mayor told Bramley at the August 18 meeting of the reasons for his termination and of Barnes's report, and gave Bramley an opportunity to respond. The court also found that Bramley was permitted to give evidence and cross-examine witnesses at the post-termination Commission hearing. On the basis of these findings of fact, the court concluded as a matter of law that Bramley's meeting with the Mayor constituted a constitutionally sufficient pre-termination hearing, and that the Commission hearing constituted a constitutionally sufficient post-termination hearing. Bramley does not contest the finding that the Commission hearing satisfied the Loudermill requirement for a post-termination hearing akin to a trial.
 
 
 15
 We must examine the district court's findings of fact under the "clearly erroneous" standard of Rule 52(a), Fed.R.Civ.P. Upon examination of the record as a whole, we do not find that the district court's findings were "clearly erroneous." Nor do we find that his conclusions of law are incorrect given our established approach in applying the Loudermill command to specific factual situations.
 
 
 16
 Loudermill requires that the terminated employee receive advance notice of the charges sufficiently specific to prevent surprise at the termination and its justification. Loudermill in effect requires cities to provide "early warning" to their terminated employees to prevent permanent employees from being deprived of their property at the personal whim of the governmental agent. Bramley's meeting with the Mayor clearly was one facet of the City of Willoughby's "early warning," as Mayor Knudson sat down in private with Bramley and gave Bramley the opportunity to persuade the Mayor that he ought not to terminate Bramley. This much is not contested.
 
 
 17
 Bramley contends, however, that the Mayor never gave him notice of the specific incidents motivating the dismissal. Bramley contends that the Mayor merely told him "that he received a report from Mr. Barnes, and there were several complaints from contractors and friends of his and voters in the city that I had not done a good job." Bramley denies ever being shown a copy of Barnes's report. He also testified that he was never even told the names of the persons making the complaints about his performance. Bramley thus contends that the district court's finding of fact is not supported by the record.
 
 
 18
 The finding, based solely on Bramley's account of the meeting with the Mayor, is not as firmly supported as is often seen upon examination of trial records. The only witness who testified about the nature of Bramley's meeting with Mayor Knudson was Bramley. At oral argument, the counsel for the City stated that the Mayor did not testify at the trial because he now lived in Florida and was not subpoenaed to testify. Thus, there is no direct testimony to refute Bramley's testimony.
 
 
 19
 We do find support for the finding when we examine the record as a whole. Barnes testified that he gave Bramley specific notice of the charges against him one month before Bramley's meeting with Mayor Knudson. Barnes testified that he had informed Bramley that he had behaved rudely to the public on a number of occasions, that he had failed to notify citizens when he would be late for inspection appointments and that he had used profanity and been observed speeding in a city-owned vehicle. Barnes told Bramley at this meeting that he would be terminated if he didn't improve his performance. Barnes subsequently wrote the Mayor a memorandum detailing the items which he discussed with Bramley and recommended that the Mayor terminate Bramley. It is uncontested that Mayor Knudson relied upon Barnes's recommendation in deciding to terminate Bramley.
 
 
 20
 Bramley was notified during his meeting with the Mayor that the Mayor had received a report from Barnes regarding Bramley's performance. Bramley also testified that he was shown a "rough draft" of a letter informing Bramley of his termination. That letter specifically referred to Barnes's report, and stated that the Mayor had received complaints about Bramley's "general attitude" and his "public relations with both contractors and residents." In light of Barnes's detailed statements to Bramley regarding the specific deficiencies in his performance, Bramley cannot credibly claim to have been surprised by the reasons behind his termination. The meeting with the Mayor thus provided Bramley with the opportunity to respond to charges of which he was already aware. This combination of specific notice and an opportunity to respond remedies precisely the evil that Loudermill intended to eliminate, and is consistent with our holdings in Creamans and Hawks.
 
 
 21
 Accordingly, the City of Willoughby's pre-termination behavior towards Bramley accords with the Supreme Court's command in Loudermill and the record adequately supports the district court's findings. We therefore AFFIRM the district court's judgment for the defendants.